UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MENACHEM EZAGUI,

                        Plaintiff,

            -against-

THE CITY OF NEW YORK, POLICE
OFFICER JACQUELI L. HARPER shield
#24348,

                        Defendants.

**MEMORANDUM OPINION
AND ORDER**

09 Civ. 5628 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

              In this Section 1983 action against the City of New York and New York

City Police Officer Jacquieli L. Harper, Plaintiff Menachem Ezagui alleges that

defendants violated his due process rights under the Fourth, Fifth, and Fourteenth

Amendments of the United States Constitution in connection with seizing and retaining

as "arrest evidence" his vehicle and the personal property contained within it.  (Cmplt.

¶ 1)  Plaintiff contends that Defendants failed to provide him with proper notice and the

opportunity to be heard regarding the seizure and retention of his vehicle and personal

property, in violation of federal constitutional law and the procedural safeguards laid out

in Krimstock v. Kelly, 506 F. Supp. 2d 249 (S.D.N.Y. 2007).[1]  (Cmplt. ¶¶ 19, 20, 27)

              On October 29, 2009, Defendants moved to dismiss the Complaint

pursuant to Fed. R. Civ. P. 12(c).  (Docket No. 20)  On November 26, 2009, Plaintiff

---

[1]  While the Complaint alleges that the seizure of Plaintiff's vehicle violated his
constitutional rights (Cmplt. ¶ 1), the affirmation in opposition submitted by Plaintiff's
counsel states that "plaintiff has not contested the initial taking of his vehicle in this
action.  Plaintiff has limited his claims to those seeking damages for violations of his
notice and hearing rights."  (Pltf. Opp. Aff. ¶ 3)

filed his opposition and a cross-motion for summary judgment.  (Docket No. 11)  For the

reasons stated below, Defendants' motion to dismiss is granted as to the City of New

York but otherwise denied, and Plaintiff's cross-motion for summary judgment is granted

as to Defendant Harper's liability but otherwise denied.

## BACKGROUND

The following facts are not in dispute:  Plaintiff is the sole owner of a

2002 GMC Envoy, VIN # 1GKDT13S422467896.  (Cmplt. ¶ 7; Pltf. Rule 56.1 Stat. ¶ 1,

Ex. A)[2]  On April 15, 2008, NYPD Officer Harper searched this vehicle and seized it and

its contents pursuant to a search warrant issued earlier that day by a New York state

judge.  (Pltf. Rule 56.1 Stat. ¶ 3)  The warrant states "that there is probable cause for

believing that evidence related to [a] crime, including but not limited to a night stick,

blood, fibers, hair samples, tissue, forensic and serology evidence as well as evidence

concerning the identification of the individual(s) involved in said crime will be found"

within Plaintiff's vehicle.  (Pltf. Rule 56.1 Stat. ¶ 4; Pltf. Ex. B)

Plaintiff was not notified at the time of the seizure that his vehicle was

being confiscated by the NYPD, nor did the authorities inform Plaintiff how to challenge

_____

[2]  For purposes of summary judgment, this Court relies on facts drawn from Plaintiff's
Rule 56.1 Statement where Defendants have either not disputed those facts or have not
done so with citations to admissible evidence.  See Giannullo v. City of New York, 322
F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . .  fails to controvert a fact so set
forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.")
(citations omitted).  Where Defendants disagree with Plaintiff's characterization of the
cited evidence, and have presented an evidentiary basis for doing so, the Court relies on
Defendants' characterization of the evidence.  Cifra v. Gen. Elec. Co., 252 F.3d 205, 216
(2d Cir. 2001) (holding that the court must draw all rational factual inferences in non-
movant's favor in deciding summary judgment motion).  The Court is entitled to rely on
"pleadings, the discovery and disclosure materials on file, and any . . . affidavits" under
Fed. R. Civ. P. 56.  The Court has considered only evidence that would be admissible at
trial, however.  Feingold v. New York, 366 F.3d 138, 155 n.17 (2d Cir. 2004).

the retention of his vehicle and the personal property it contained.[3]  (Cmplt. ¶ 7; Pltf. Rule 56.1 Stat. ¶¶ 7-8)  The following day, April 16, 2009, Plaintiff participated in a line-up as part of a criminal investigation; Plaintiff was not identified and was released from custody.  (Cmplt. ¶ 10; Pltf. Rule 56.1 Stat. ¶¶ 9-10; Def. Reply Br. at 6).  No criminal charges were ever brought against Plaintiff "relating to the matter for which plaintiff's vehicle was confiscated."  (Def. Rule 56.1 Counter-Stat. ¶ 11; Cmplt. ¶ 10; Pltf. Rule 56.1 Stat. ¶ 11)

On February 18, 2009, Plaintiff's recently retained counsel made a written demand on the Kings County District Attorney's Office for the return of Plaintiff's vehicle and personal property.[4]  (Cmplt. ¶ 11; Pltf. Rule 56.1 Stat. ¶ 12; Pltf. Ex. F)  On February 25, 2009, the District Attorney's office notified Plaintiff's counsel that it planned to retain Plaintiff's vehicle as evidence in a criminal case.  (Cmplt. ¶ 12; Pltf. Rule 56.1 Stat. ¶ 13; Pltf. Ex. G)  That same day, pursuant to an ex parte application by the District Attorney's office, New York Supreme Court Justice Martin P. Murphy found that the District Attorney had "made a sufficient showing as required by the Krimstock Order," and authorized the continued retention of Plaintiff's vehicle "as evidence by the New York City Police Department in [connection with a prosecution of Yitzchak Shuchat] until the conclusion of the criminal case and any possible appeal."  (Cmplt. ¶

---

[3]  Defendants do not dispute these facts.  In their Rule 56.1 Counter-Statement, the Defendants note that "plaintiff retrieved the property vouchers [concerning his vehicle and personal property] in or about February 2009, [and that these vouchers] provide notice as to post-deprivation remedies."  (Def. Rule 56.1 Stat. ¶¶ 7-8)  Plaintiff's vehicle was seized in April 2008, however, and the Defendants concede that Plaintiff received no formal notice regarding the seizure of his vehicle and personal property, and his right to contest such seizure, until February 2009 – ten months after these items were seized.

[4]  When Plaintiff's vehicle was seized, it contained, inter alia, 44 CDs, a GPS device, an Apple ipod, and $18.16 in cash and coins.  (Pltf. Ex. D)

12; Pltf. Rule 56.1 Stat. ¶ 14; Pltf. Ex. H)  This order did not address in any fashion Plaintiff's demands for return of his personal property.  Accordingly, on February 27, 2009, Plaintiff sent a second written demand to the District Attorney's office seeking return of the personal property contained in Plaintiff's vehicle.  (Cmplt. ¶ 13; Pltf. Rule 56.1 Stat. ¶ 15; Pltf. Ex. I)  Plaintiff received no response to this second demand.  (Cmplt. ¶ 13; Pltf. Rule 56.1 Stat. ¶16)

On March 4, 2009, Plaintiff moved for an order to vacate or amend Justice Murphy's retention order.  (Cmplt. ¶ 14; Pltf. Rule 56.1 Stat. ¶17; Pltf. Ex. J)  On June 5, 2009, Justice Murphy issued a second retention order finding that the "People have made a sufficient showing . . . that the vehicle and its contents are needed as evidence for the continuing investigation and possible trial in this case."[5]  (Cmplt. ¶ 15; Pltf. Rule 56.1 Stat. ¶ 18; Pltf. Ex. K)  Justice Murphy's second retention order does not indicate whether a hearing was held on the matter, what evidence the court considered, or what procedural steps were followed in determining whether retention was appropriate, nor does the order discuss the requirements of the Krimstock line of cases.  The only rationale given for continued retention is that "since Defendant [Shuchat] has not yet raised a defense in this case, the People must retain the vehicle and its contents so that . . . [any defenses raised in the future can be investigated or rebutted at trial and so that] the Defendant has the opportunity to evaluate whether the vehicle and its contents contain any exculpatory evidence."  (Pltf. Ex. K)

_____

[5]  Justice Murphy ordered that only the $18.16 need be returned to Plaintiff.  (Pltf. Rule 56.1 Stat. ¶ 18; Pltf. Ex. K)

4

Plaintiff's vehicle and personal property continue to be held by the NYPD property clerk, more than two years after they were seized.  (Cmplt. ¶ 16; Def. Rule 56.1 Stat. ¶ 20)

## DISCUSSION

### I.   LEGAL STANDARDS

The Fourteenth Amendment to the United States Constitution guarantees that no person shall be deprived "of life, liberty or property, without due process of law." U.S. Const. amend. XIV § 1.  "The touchstone of due process, of course, is 'the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'"  Spinelli v. City of New York, 579 F.3d 160, 169 (2d Cir. 2009) (quoting Mathews v. Eldridge, 424 U.S. 319, 348-49 (1976)).  "It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'"  Fuentes v. Shevin, 407 U.S. 67, 80 (1983) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983).  These requirements are not fixed, however, as "due process is flexible and calls for such procedural protections as the particular situation demands."  Eldridge, 425 U.S. at 334.

"To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment," courts (1) "identify the property interest involved," and (2) "determine whether the plaintiff received constitutionally adequate process in the course of the deprivation."  O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005) (citing Harhay v. Town of Ellington Bd. of Educ., 323

F.3d 206, 212 (2d Cir. 2003)).  Courts analyze procedural due process claims under the three-factor balancing test prescribed in Eldridge, 424 U.S. at 335.  This test weighs: "'(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; [and] (3) the government's interest, including the possible burdens of alternative procedures.'" Kuck v. Danaher, 600 F.3d 159, 163 (2d Cir. 2010) (quoting O'Connor v. Pierson, 426 F.3d 187, 197 (2d Cir. 2005)).

The "City of New York has authorized its police department to seize any motor vehicle that is 'suspected of having been used as a means of committing crime or employed in aid or furtherance of crime,' N.Y. City Admin. Code § 14-140(b), as the first step toward obtaining title to the vehicle through civil forfeiture." Ford Motor Credit Co. v. N.Y. City Police Dep't, 503 F.3d 186, 188 (2d Cir. 2007) (quoting Krimstock v. Kelly, 306 F.3d 40, 44 (2d Cir. 2002)).  Through a series of decisions in Krimstock v. Kelly, courts in this Circuit have articulated specific requirements related to the process due the owner of a vehicle seized pursuant to an ongoing criminal investigation.

Krimstock involved a Section 1983 challenge to the constitutionality of New York City's forfeiture statute, N.Y. City Admin. Code § 14-140.  See Krimstock v. Kelly, 464 F.3d 246, 248 (2d Cir. 2006).  The scope of the Krimstock litigation, however, expanded to include the NYPD's retention of a vehicle for purposes of arrest or trial evidence.  Krimstock, 464 F.3d at 249.  Krimstock involved "no challenge to an underlying criminal proceeding or the procedural rights due the criminal defendant. Rather, it involve[d] the deprivation of property pending a criminal proceeding[, including the property of] an innocent owner who is not party to the criminal

6

proceeding." Id. at 254.  The Second Circuit held that "[t]he balance of factors relevant under the Matthews v. Eldridge test weighs in favor of having review by a neutral fact-finder of a prosecutor's decision to retain a vehicle as potential evidence – although no adversarial hearing is required." Id. at 255.  In so holding, the Court noted that "given the importance of a vehicle to an individual's ability to work and conduct the affairs of life . . ., and the serious harm thus resulting from the undue retention of a vehicle by the government, some immediate judicial review of the retention is required." Id.  The Circuit remanded the case to the district court for a determination of what procedures should apply in connection with the required judicial review.[6] Id.

On remand, Judge Baer laid out the procedures by which a district attorney may seek retention of a vehicle seized as evidence in connection with an ongoing criminal proceeding.  Critical to those procedures is the provision of notice to the vehicle's owner of the owner's right to challenge the seizure, and an opportunity to be heard on this issue:

> Notice of the right to a hearing will be provided at the time of seizure by attaching to the voucher already provided to the person from whom a vehicle is seized a notice, in English and Spanish, as set forth below.  A copy of which notice will also be sent by mail to the registered and/or titled owner of the vehicle within five business days of seizure.  The notice will appear in type at least as large as the largest entry elsewhere on the form, but in no event smaller than 8-point type, and will read as follows:

---

[6] Although the Second Circuit instructed the district court on remand "to determine the procedures by which a district attorney may apply to retain . . . a vehicle seized pursuant to a warrantless arrest," the district court commented "that the analysis would [not appear to] be different regarding vehicles seized pursuant to a warrant."  The district court, noted, however, "that that issue is not before this Court."  Krimstock, 506 F. Supp. 2d 249, 251, 251 n.1 (S.D.N.Y. 2007).

## NOTICE OF RIGHT TO A RETENTION HEARING

**"You are entitled to a hearing to determine whether it is valid for the Property Clerk to retain the vehicle seized in connection with an arrest. Please complete this form, make and keep a copy for yourself, and deliver or mail the completed original form to NYPD Legal Bureau, 2 Lafayette Street, 5th Floor, New York, New York 10007, Attention: Vehicle Seizure Unit. When the form is received, you will be notified of the date, time and place of your hearing, which will be held within 10 days of receipt of this form. The NYPD Legal Bureau will do its best to accommodate your schedule by having the hearing on a date when you are available. Please indicate in the space provided below the date(s), if any, within the next four weeks following receipt of this form, when you are NOT available to attend a hearing. The hearing will be held at the Office of Administrative Trials and Hearings, located at 40 Rector Street, 6th Floor, New York, New York 10006, telephone number (212) 442-4000. The hearing will provide you with an opportunity to be heard, either yourself or through your attorney, with respect to three issues: (1) whether probable cause existed for the arrest of the vehicle operator; (2) whether it is likely that the City will prevail in an action to forfeit the vehicle; and (3) whether it is necessary that the vehicle remain impounded in order to ensure its availability for a judgment of forfeiture. The burden of proof by a preponderance of the evidence as to each of these issues will be on the Police Department, and the judge may consider such hearsay and other evidence as the judge may consider reliable. If the Police Department proof is insufficient as to any of these issues, the vehicle will be returned to the claimant within 10 days. Additionally, a claimant who is an owner may present an "innocent owner" defense, namely that in some instances, a vehicle may not be forfeited if its owner did not know or have reason to know that the vehicle would be used in the commission of a crime. Only one person may appear as claimant, and if more than one of these forms is received by the Police Department, priority will go to the registered owner of the vehicle.**

**However, such hearing shall not be held if there is an intervening order by a Judge of the Criminal Court or a Justice of the Supreme Court that the vehicle is to be held as evidence in a criminal proceeding (a "Retention Order"). If a Retention Order is issued, you have the right to move to vacate or modify that Order in the Court from which it was issued."**

Krimstock v. Kelly, 99 Civ. 12041 (HB), 2007 U.S. Dist. LEXIS 82612 (S.D.N.Y.

October 1, 2007) (emphasis added).

8

Judge Baer ruled that district attorneys may seek retention orders <u>ex parte</u>, but a prosecutor's decision to retain a vehicle as evidence must be subject to the review of a "neutral-fact finder."  <u>Krimstock v. Kelly</u>, 506 F. Supp. 2d 249, 254 (S.D.N.Y. 2007).  The application for a retention order "must affirm that there are reasons for the retention, what they are, and that they relate to the contested issue in the underlying criminal proceeding," and "[s]econdly, . . . the [prosecutor] must affirm that no other means besides impoundment (such as more time-limited photographing or forensic testing) will suffice to preserve the evidentiary value of the vehicle."  <u>Id.</u> at 254.  The judge is "the ultimate arbiter of whether the application is to be granted, and for how long."  <u>Id.</u> at 255.

If an <u>ex parte</u> application for a retention order is granted by a judge, the owner or claimant of a vehicle is entitled to a post-deprivation opportunity to move to vacate or amend the order.  <u>Id.</u> at 256.  Judge Baer noted that procedural due process "'at a minimum'" requires "'that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.'"  <u>Id.</u> at 255 (quoting <u>United States v. Abuhamra</u>, 389 F.3d 309, 322 (2d Cir. 2004) (internal citations omitted)).  "[A]n ex parte order is a temporary expedient."  <u>Id.</u>  The district court went on to hold that claimants must

> be provided with the opportunity for a hearing, subsequent to an <u>ex parte</u> retention order, wherein they may move to vacate or amend the retention order via a challenge to the legitimacy or necessity of the continued retention of the vehicle as evidence.  Following granting of the retention order, the District Attorney shall promptly serve a copy of that order upon the claimant who made the demand.  The claimant may then move for a hearing which will be held within 30 days of service of the motion. Service will be by registered or certified mail on the District Attorney and the criminal defendant.

Id. at 256.

The procedures set forth in Judge Baer's October 2007 order apply both to vehicles seized as "instrumentalities of crimes" – concerning which the prosecutor will seek forfeiture – and to vehicles, such as Plaintiff's, that are being retained as evidence of a crime:

8.  If the vehicle is seized as evidence of a crime, either the person from whom the vehicle was seized (if in lawful possession of the vehicle) or its owner, if different from such person, may make a demand for a written statement from the prosecutor that retention of the vehicle as evidence is not necessary.  The demand may be either in the form of a request for a hearing as provided in the Krimstock Order, or by a written demand for a release made directly to the office of the District Attorney prosecuting the criminal case.

9. The District Attorney shall respond in writing no later than seven days after receipt of a request.  If the District Attorney decides that continued retention of the vehicle is not necessary for the criminal case, the District Attorney shall serve a written statement to that effect on the person who made the demand. If the District Attorney seeks to retain the vehicle as evidence for the criminal case, an application for a retention order must be made during the seven-day period before a judge with jurisdiction over the criminal case.

10. The application for a retention order shall be supported by an affirmation from an assistant district attorney familiar with the case. The application may be made ex parte. It must refer to this Order and the standards laid out in paragraph eleven.

11. The judge before whom the application is made may issue the retention order if the affirmation, citing facts particular to the individual case, makes a sufficient showing that:  1) specific facts about the condition of the vehicle at the time of seizure may be relevant in the criminal case; and 2) there are no reasonable means other than impoundment such as photographing or testing, to preserve the evidentiary value of the vehicle for presentation to the trier of fact.  If the judge ruling on the motion finds that photographing, testing, or other means are sufficient to preserve the evidence, the judge may order the vehicle to be retained for a period of time sufficient to allow law enforcement to complete such photographing, testing, or other means. The identification of evidentiary purposes of the vehicle in the

prosecutor's affirmation may not be used to restrict the prosecution from making arguments in a later proceeding based on other theories.

12. An order authorizing retention of the vehicle (i.e., a "retention order") must be served by the District Attorney within 10 days following the demand upon the person who made the demand. If such an intervening retention order is issued, a "Krimstock hearing," see PP 3-7, will not be held during the pendency of the retention order.

An order denying the retention of the vehicle must likewise be served within 10 days of the date of the Order upon the person who made the demand.

13. The person who made the demand may move to vacate or amend the retention order within 10 days following the receipt thereof. Service of that motion must be made in person or by registered or certified mail on the District Attorney and on the defendant in the criminal case, if a different person than the individual who made the demand. A hearing shall be held within 30 days of service of the motion. The hearing shall address the legitimacy and/or the necessity of the continued impoundment of the vehicle as evidence, and may not be used to obtain premature or unwarranted discovery for the defendant in the criminal case. The judge ruling on the motion may set a date, not to exceed 30 days from the date of the order, by which the Police Department shall release the vehicle, unless continued impoundment is otherwise authorized by law. The judge ruling on the motion may condition vacatur or amendment of the retention order on a waiver by the defendant in the criminal case of any factual claim or defense relating to the condition of the vehicle when seized. Said waiver, if given, will bind the defendant throughout the pendency of the criminal matter.

14. Upon presentation to the Police Department of: a written statement from a prosecutor that a vehicle is not needed as evidence; or a written denial by a court of an application for a retention order; or an order vacating a retention order, the Police Department must, within 30 days, release the vehicle to the person who made the demand, unless continued impoundment of the vehicle is otherwise authorized by law. If the Police Department seeks at this time continued impoundment of the vehicle as an "instrumentality of a crime," the Police Department shall provide notice as set forth in P 4.

Krimstock v. Kelly, 2007 U.S. Dist. LEXIS 82612, at **8-9.

## II.   PLAINTIFF'S CLAIMS AGAINST THE CITY WILL BE DISMISSED

The City contends that Plaintiff's claims against it must be dismissed because he has failed to make out a claim for municipal liability.  (Def. MTD Br. at 1-2)  Because Plaintiff fails to allege facts from which the City could be found liable under Section 1983, his claims against the City must be dismissed.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[7] Ashcroft v. Iqbal, 556 U.S. --, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To meet this standard, a complaint's factual allegations must permit the Court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct."  Id. at 1950.  "In considering a motion to dismiss . . .  the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).  However, "threadbare recitals of

---

[7]  In ruling on Defendants' motion to dismiss, this Court has considered the allegations of the Complaint, the exhibits to the Complaint, statements or documents incorporated by reference in the Complaint, and documents which are integral to the complaint, including Plaintiff's letters demanding return of his property and the District Attorney's responsive letters.  The Court may consider such documents without converting the City's motion to dismiss to a motion for summary judgment.  See Kamholtz v. Yates County, 350 F. App'x 589, 591-92 (2d Cir. 2009); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) ("'[t]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.") (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]."  Iqbal, 129 S.Ct. at 1949.  Motions to dismiss pursuant to Rule 12(c) of the Federal Rules are considered under the same standards "applicable to a motion under Rule 12(b)(6)."  King v. Am. Airlines, Inc., 284 F.3d 352, 356 (2d Cir. 2002) (quoting Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)).

  To state a Section 1983 claim against the City, Plaintiff must plead facts making it plausible to believe that "(1) an official policy or custom . . . (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right."  Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); see also Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 692 (1978) (declaring that § 1983 "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights").  Here, the Complaint does not cite any "official policy or custom" that caused the alleged violation of Plaintiff's constitutional rights.  Zahra, 48 F.3d at 685.

  While Plaintiff argues that the district court's decision in Krimstock, 506 F. Supp. 2d at 256, contains allusions to NYPD officers' repeated failures to issue required forms of notice prior to seizing property (See Pltf. Ex. E (Pltf. MTD Aff. at 6-7)), no allegations of this sort are made in the Complaint.  That this issue may have been raised in other cases does not cure the facial inadequacy in Plaintiff's Complaint.  It is well settled that the mere assertion that a municipality has a custom, policy or practice that led to the alleged unconstitutional deprivation is "generally insufficient to establish Monell liability."  Perez v. City of New York, No. 97 Civ. 2915 (FB), 2002 U.S. Dist. LEXIS 4297 (E.D.N.Y. Mar. 14, 2002) (citing Dwares v. City of New York, 985 F.2d 94,

100 (2d Cir. 1993)).  Here, however, the Complaint does not even contain that bare allegation, nor does it set forth any facts suggesting that a City policy or practice caused or contributed to the alleged deprivation of Plaintiff's constitutional rights.  For this reason, Plaintiff's claims against the City must be dismissed.

### III.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIMS AGAINST OFFICER HARPER

Defendant Harper argues that Plaintiff's claims against her should be dismissed because (1) Plaintiff was not deprived of his property without due process; (2) Plaintiff cannot demonstrate that he suffered actual injury flowing from the alleged constitutional deprivation; and (3) she is entitled to qualified immunity.  (Def. MTD Br. at 1-2)  Defendant Harper further contends that any contrary ruling as to the due process issue would violate the Rooker-Feldman doctrine which, under certain circumstances, bars federal courts from hearing complaints about injuries caused by a state court judgment.  Plaintiff contends that he is entitled to summary judgment on his claim that his "due process rights were violated when defendants confiscated his vehicle without notice or an opportunity to be heard."  (Pltf. Br. at 1)

Although there has been no discovery in this matter, Defendants have not argued that discovery is necessary before this Court can resolve Plaintiff's motion for summary judgment.  The Court concludes that Plaintiff's motion presents a strictly legal question, and that the material facts and circumstances underlying the motion are not in dispute.[8]  Accordingly, Plaintiff's motion for summary judgment is ripe for resolution.

_____

[8]  Defendants' response to Plaintiff's Rule 56.1 statement consists largely of assertions that they "[d]eny knowledge and information sufficient to form a belief as to the truth of the allegations contained in [Plaintiff's Rule 56.1 Statement]."  (Def. Rule 56.1 Counter-Stat.)  A party's statement that it "can neither admit nor deny [an adversary's] statement

For the reasons stated below, Plaintiff's motion for summary judgment will be granted. This Court concludes that (1) Plaintiff was deprived of property without due process; (2) he need not demonstrate actual injury to be entitled to summary judgment on liability as against Officer Harper; and (3) Officer Harper is not entitled to qualified immunity. The Court further concludes that this case does not implicate the Rooker-Feldman doctrine, because it does not involve an injury caused by a state court judgment.[9]

---

based upon the factual record is not a sufficient response to establish a disputed fact, however." Universal Calvary Church v. City of New York, No. 96 Civ. 4606 (RPP), 2000 U.S. Dist. LEXIS 17037, at *4 n.5 (S.D.N.Y. Nov. 27, 2000). "Local Rule 56.1 states that the moving party's 56.1 statement 'will be deemed to be admitted unless controverted,' Rule 56.1(c), and requires that such denials be supported by a specific citation to admissible evidence, Rule 56.1(d)." Id. Accordingly, any of the Plaintiff's Rule 56.1 Statements that Defendants do not specifically deny – with citations to supporting evidence – are deemed admitted for purposes of Plaintiff's summary judgment motion. See Fed. R. Civ. P. 56; Local Civ. R. 56.1; see also Calvary Church, 2000 U.S. Dist. LEXIS 17037, at *4 n.5 (citing Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000) (noting that the district court properly "granted summary judgment in favor of defendants following Millus's failure to deny, in accordance with Rule 56.1 of the court's local rules," various allegations of the defendants); Cooper v. Gottlieb, No. 95 Civ. 10543 (JGK), 2000 WL 1277593, at *4 (S.D.N.Y. Sept. 8, 2000) (holding that a denial without evidence to support the denial is "conclusory" and "wholly inadequate under Local Civil Rule 56.1(d)"); Wenzhou Wanli Food Co., Ltd., v. Hop Chong Trading Co., Inc., No. 98 Civ. 5045 (JFK), 2000 WL 964944, at *3 (S.D.N.Y. July 11, 2000) (noting that "unsupported allegations will not suffice" in responding to a motion for summary judgment); Aztar Corp. v. NY Entertainment, LLC, 15 F. Supp. 2d 252, 254 n.1 (E.D.N.Y. 1998) (noting that "Defendants' 56.1 Statement is replete with responses of 'lack knowledge or information sufficient to either admit or deny.' Defendants have not created any issues of fact through this artifice."), aff'd, 210 F.3d 354 (2d Cir. 2000)).

[9]  In considering Plaintiff's motion for summary judgment, this Court has applied the following well settled standards:  Summary judgment is appropriate only when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Whether facts are material is a determination made by looking to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The movant's burden will be satisfied if he can point to an

A.    **Plaintiff Was Deprived of Property Without Due Process**

It is undisputed that in April 2008, when Plaintiff's vehicle was seized by Officer Harper, she did not give him notice of his right to a hearing to challenge the validity of the NYPD's retention of his vehicle or otherwise comply with the procedures set forth in Krimstock v. Kelly, 506 F. Supp. 2d 249, 254 (S.D.N.Y. 2007).  Defendants contend, however, that "the issue of notice is now moot" (Def. Br. 14), because ten months after the seizure – when Plaintiff retained a lawyer to contest the retention – a state court judge approved the continued retention of Plaintiff's vehicle and personal property.  Defendants, however, cite no law for the proposition that the state court judge's retention orders, and denial of Plaintiff's motion to vacate, grant absolution for the due process violation that occurred during the previous ten months.  Accepting Defendants' argument would render irrelevant the procedural protections provided by Krimstock and provide significant disincentive for the police to give the required notice,

---

absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Donahue v. Artisan, No. 00 Civ. 8326 (JGK), 2002 WL 523407, at *1 (S.D.N.Y April 8, 2002) (explaining that party resisting summary judgment must "come forward with specific facts to show there is a factual question that must be resolved at trial").  "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts."  Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (citations and internal quotation marks omitted). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).  In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment."  Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  However, "a party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'"  Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).

because any delay in notice, no matter how long, could be excused by a state court judge's subsequent approval of the retention.

As noted above, the "touchstone" for conducting a due process review is considering whether "'a person in jeopardy of serious loss [has been given] notice of the case against him and opportunity to meet it.'" Spinelli, 579 F.3d at 169 (quoting Eldridge, 424 U.S. at 348-49). In determining whether such an individual has been accorded due process, the court must ask whether he or she was given notice of the right to challenge such a deprivation, and an opportunity to be heard, "'at a meaningful time and in a meaningful manner.'" Fuentes, 407 U.S. at 80 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

As the Second Circuit recognized in the Krimstock line of cases, and as it has reiterated since, "delay [may] 'exceed[] the bounds of due process.'" Kuck v. Danaher, 600 F.3d 159, 163 (2d Cir. 2010) (quoting Spinelli, 579 F.3d at 174). In Krimstock, the Court noted that vehicle "owners were deprived of their vehicles for a year or more before they had any opportunity to challenge the seizure [of their car]," and that "this interval was simply too long in light of the private interests at stake." Krimstock, 306 F.3d at 44-46. "'[T]o state that the forfeiture proceeding, which often occurs more than a year after a vehicle's seizure, represents a meaningful opportunity to be heard at a meaningful time on the issue of the continued impoundment is to stretch the sense of that venerable phrase to the breaking point.'" Kuck, 600 F.3d at 164 (quoting Krimstock, 306 F.3d at 53). Similarly here, Plaintiff received no notice of his rights, and was given no opportunity to be heard, until ten months or more had elapsed since the seizure of his property.

While ordinarily the question of whether a delay amounts to a due process violation requires a careful balancing of the <u>Eldridge</u> factors, here that balance has already been struck.  In <u>Krimstock</u>, 306 F.3d at 67, the Second Circuit ruled that

> the Fourteenth Amendment guarantee that deprivations of property be accomplished only with due process of law requires that plaintiffs be afforded a <u>prompt</u> post-seizure, pre-judgment hearing before a neutral judicial or administrative officer to determine whether the City is likely to succeed on the merits of [the retention application] and whether means short of retention of the vehicle can satisfy the City's need to preserve it from destruction or sale during the pendency of proceedings.

<u>Id.</u> (emphasis added).

Defendants do not deny the delay and make no effort to defend it.  They simply argue that the delay in notice is "moot," because when Plaintiff was finally advised of his rights and challenged the retention, a state court rejected his arguments.  Defendants then go on to argue that Plaintiff's action should be dismissed because he cannot establish actual injury and compensatory damages, given that "the alleged deprivation for which he seeks damages would . . . have occurred had proper, constitutionally sound procedures been observed."  (Def. Br. 12)

Plaintiff is not required to demonstrate actual injury and compensatory damages in order to prevail on his Section 1983 claim, however.  The Supreme Court rejected that argument long ago, in <u>Carey v. Piphus</u>, 435 U.S. 247, 260 (1978):

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, <u>see</u> <u>Boddie v. Connecticut</u>, 401 U.S. 371, 375 (1971); <u>Anti-Fascist Committee v. McGrath</u>, 341 U.S., at 171-172 (Frankfurter, J., concurring), we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.

Carey, 435 U.S. at 266-67; see also Brody v. Village of Port Chester, 345 F.3d 103, 112

(2d Cir. 2003) ("In a procedural due process challenge, the question before the court is

whether the process affording the plaintiff an opportunity to participate in governmental

decision-making before being deprived of his liberty or property was adequate, not

whether the government's decision to deprive the plaintiff of such liberty or property was

ultimately correct.") (citing Fuentes v. Shevin, 407 U.S. 67, 87 (1972) ("The right to be

heard does not depend upon an advance showing that one will surely prevail at the

hearing.  To one who protests against the taking of his property without due process of

law, it is no answer to say that in his particular case due process of law would have led to

the same result because he had no adequate defense upon the merits."); Kim v. Hurston,

182 F.3d 113, 119 (2d Cir. 1999) ("This case is unusual in that the minimal hearing that

procedural due process requires would have done [the plaintiff] little good since she

could not have realistically contested the [outcome]. . . . Nevertheless, the procedural due

process requirement of a statement of reasons must be observed.")).

            In Carey, elementary and secondary school students claimed that they had

been suspended from school without receiving procedural due process.  The Supreme

Court endorsed the Court of Appeals' holding that if the school board could prove on

remand that the students would have been suspended even if a proper hearing had been

held, then the students would not be entitled to compensatory damages.  435 U.S. at 260.

The Supreme Court went on to hold, however, "that if, upon remand, the District Court

determines that respondents' suspensions were justified, respondents nevertheless will be

entitled to recover nominal damages. . . ."  Id. at 266-67.  Accordingly, assuming

arguendo that Plaintiff cannot prove actual injury, such a finding provides no basis for

granting Defendant Harper's motion to dismiss or denying Plaintiff's motion for summary judgment.

Defendant Harper violated Plaintiff's right to procedural due process when she seized his vehicle and failed to give him the notice required under Krimstock. Accordingly, her motion to dismiss will be denied, and Plaintiff's motion for summary judgment will be granted as to Defendant Harper's liability.

### B.      Defendant Harper is Not Entitled To Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982)).  The defense shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818.

Defendants are entitled to dismissal on qualified immunity grounds where the rights allegedly violated were not clearly established at the time of the alleged constitutional deprivation, Islam v. Fischer, No. 07 Civ. 3225 (PKC), 2008 WL 110244, at *5-6 (S.D.N.Y. Jan. 9, 2008), or there is no plausible factual dispute as to "'whether . . . a reasonable police officer should have known he acted unlawfully. . . .'" Id. (quoting Lennon, 66 F.3d at 421).  Where a complaint's allegations are such that "reasonable officials in defendants' positions could disagree as to whether defendants' . . . actions against plaintiff were unlawful," the defendant is entitled to judgment as a matter of law on the issue of qualified immunity.  Id. at *4 (citing Lennon, 66 F.3d at 421).

Here, the rights at issue are clearly established.[10]  Since at least the Second Circuit's 2006 Krimstock decision, it has been clear that owners of vehicles that have been seized as evidence in criminal cases are entitled to notice of their right to a hearing and "some immediate judicial review of the retention [of their vehicle]." Krimstock, 464 F.3d at 255.  Indeed, in that decision, the Second Circuit vacated that part of the district court's ruling holding that the Krimstock notice and hearing rule only applied in the forfeiture context, and held that the Krimstock obligations apply, as well, where a vehicle has been seized as evidence in a criminal case.  464 F.3d at 250, 253, 255.  Judge Baer's 2007 Krimstock decisions confirm that the NYPD must give an owner of a vehicle notice of his rights to a Krimstock hearing at the time of seizure.  506 F.Supp. 2d at 257; 2007 U.S. Dist. LEXIS 82612, at **8-9.

In light of these decisions, it was not objectively reasonable for a police officer to believe that it was lawful to seize and retain Plaintiff's vehicle without informing him of that seizure and of his right to contest the continued retention of his vehicle.[11]

### C.    The Rooker-Feldman Doctrine Is Not Applicable

Defendants argue that because "plaintiff was heard by a state court judge regarding the seizure and retention of the vehicle," and because "[t]he state court judge

---

[10]  Rights are "clearly established" when supporting Supreme Court or Second Circuit precedent existed at the time of the alleged unconstitutional conduct.  See Russell v. Scully, 15 F.3d 219, 223 (2d Cir. 1994).

[11]  Defendants contend that Plaintiff must have become aware of the retention of his vehicle before he chose to contest the retention in February 2009.  (Def. MTD Br. at 9-10)  The relevant inquiry, however, is whether Defendants complied with their obligation to provide the proper notice at the time of seizure.  That Plaintiff discovered ten months later how to contest the retention does not relieve Defendants of their obligation to provide procedural due process.

undoubtedly reviewed both plaintiff's submissions and those of the Kings County District Attorney" before granting the District Attorney's application for continued retention, the Rooker-Feldman doctrine applies, and Plaintiff's only remedy is to "move for reconsideration before the state court judge and present any additional arguments he had as to why the prosecution's retention of his property was unreasonable."  (Def. Reply Br. at 8-9)  The Rooker-Feldman doctrine is not applicable here.

The Rooker-Feldman doctrine bars a losing party in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994). The doctrine "recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme] Court, see [28 U.S.C.] § 1257(a)."  Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 644 n.3 (2002).  The doctrine occupies "narrow ground," Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)), and is "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil, 544 U.S. at 283-84.

"[T]he applicability of the Rooker-Feldman doctrine turns not on the similarity between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal

court." <u>McKithen v. Brown</u>, 481 F.3d 89, 98 (2d Cir. 2007) (emphasis in original) (citing <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 87 (2d Cir. 2005) ("[A] plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of <u>Rooker-Feldman</u>.")); <u>Exxon Mobil</u>, 544 U.S. at 293 (the <u>Rooker-Feldman</u> doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," because "[i]f a federal plaintiff present[s] some independent claim[, <u>i.e.</u>, a claim based on an injury that was not <u>caused</u> by the state-court judgment,] albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion" (internal quotation marks omitted) (second alteration in original))).

   Here, Plaintiff does not complain of an injury caused by a state court judgment; instead, he complains of an injury caused by Defendants' failure to give him notice of his due process rights related to the seizure and retention of his vehicle. This alleged deprivation occurred long before February 18, 2009, when Justice Murphy first became involved. Plaintiff's claim against Defendant Harper for failing to give him proper notice of the April 2008 seizure and retention of his vehicle is entirely distinct from Judge Murphy's later orders approving the District Attorney's application for continued retention. Accordingly, the <u>Rooker-Feldman</u> doctrine is not applicable and does not bar Plaintiff's claims.

   **D.**  **Additional Briefing and Argument on Damages is Required**

   This Court has concluded that Plaintiff is entitled to summary judgment as to liability with respect to his claims against Defendant Harper. Defendants correctly

contend, however, that actual injury – not just a showing that Defendant Harper violated Plaintiff's constitutional rights – is required for an award of compensatory damages.  See Kassim v. City of Schenectady, 415 F.3d 246, 250 (2d Cir. 2005) (citing Carey v. Piphus, 435 U.S. 247, 254-64, 266 (1978) (discussing the need to demonstrate actual injury to justify damages exceeding a nominal award); Patterson v. City of Utica, 370 F.3d 322, 337 (2d Cir. 2004) (noting that a plaintiff "may . . . be entitled to collect compensatory damages, if he can prove that he suffered actual injury as a result of the denial of due process"); McCann v. Coughlin, 698 F.2d 112, 126 (2d Cir. 1983) ("It is well established that to collect compensatory damages in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff must prove more than a mere violation of his constitutional rights.  He must also demonstrate that the constitutional deprivation caused him some actual injury.")).

Plaintiff has submitted an affidavit stating that he "used the [seized] vehicle on a daily basis to commute to and from work, as well as to perform deliveries for [his] job," and that "[w]ithout the vehicle, [he has] been unable to work as it was a required condition of [his] employment."  (Pltf. Ex. E ¶ 5)  Krimstock I recognizes that "[t]he particular importance of motor vehicles derives from their use as a mode of transportation and, for some, the means to earn a livelihood," Krimstock v. Kelly, 306 F.3d 40, 61 (2d Cir. 2002), and "the Supreme Court has affirmed the importance of the income stream derived from ownership of property."  Ford Motor Credit Co. v. N.Y. City Police Dep't, 503 F.3d 186, 194 (2d Cir. 2007) (citing United States v. James Daniel Good Real Prop., 510 U.S. 43, 54 (1993) (noting that "Good was renting his home to tenants," but explaining that even if "the tangible effect of the seizure was limited to

taking the $900 a month he was due in rent[,] . . . it would not render the loss
insignificant or unworthy of due process protection")).

Plaintiff's affidavit indicates that he suffered actual injury as a result of
being deprived of access to his vehicle since April 2008. Whether Plaintiff can recover
compensatory damages for this injury – in light of the state court's orders approving
retention of Plaintiff's vehicle – is unclear. The Court requires additional briefing and
argument concerning this issue, and will set a schedule for such by separate order.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is
GRANTED as to the City of New York and DENIED as to Defendant Harper. Plaintiff's
cross-motion for summary judgment is DENIED as to the City of New York and
GRANTED as to liability with respect to Defendant Harper. Damages will be decided
after additional briefing and argument. The Clerk is directed to terminate all pending
motions. (Docket Nos. 11 & 20)

Dated: New York, New York                SO ORDERED.
       June 24, 2010

Paul G. Sardophe

Paul G. Gardephe
United States District Judge

25